FILED
John E. Triplett, Clerk of Court
United States District Court
By loganherb at 10:54 am, Apr 10, 2024

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
KAYCI G. HINES
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 616-8789
Email: Kayci.Hines@usdoj.gov

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. __CV424-69__ |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR |
| | ) | INJUNCTIVE RELIEF AND |
| | ) | CIVIL PENALTIES UNDER |
| v. | ) | THE CLEAN AIR ACT |
| | ) | |
| COLONIAL OIL INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America ("United States"), by the authority of the Attorney General and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges:

**NATURE OF THE ACTION**

1. This is a civil action against Colonial Oil Industries, Inc. ("Defendant") brought pursuant to Sections 205(b) and 211(d) of the Clean Air Act ("CAA" or "the Act"), as amended, 42 U.S.C. §§ 7524(b) and 7545(d), for Defendant's violations of Section 211(h) and (o) of the

1

CAA, 42 U.S.C. §§ 7545(h), (o), and the implementing fuels regulations issued thereunder at 40 C.F.R. Part 80.

2.      By this Complaint, the United States seeks civil penalties and injunctive relief pursuant to Sections 205(b) and 211(d) of the CAA, as amended, 42 U.S.C. §§ 7524(b) and 7545(d), for Defendant's violations of the CAA and the renewable fuel standards at 40 C.F.R. Part 80, Subpart M, and the gasoline volatility regulations at 40 C.F.R. Part 80, Subpart B.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the subject matter of this action and the parties pursuant to Sections 205(b) and 211(d) of the CAA, 42 U.S.C. §§ 7524(b) and 7545(d); and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Under Section 211(d)(1) of the CAA, 42 U.S.C. § 7545(d)(1), this Court is authorized to assess civil penalties for violations of Sections 211(h) and (o) of the CAA, 42 U.S.C. §§ 7545 (h), (o), and 40 C.F.R. Part 80.

5.      Under Section 211(d)(2) of the CAA, 42 U.S.C. § 7545(d)(2), this Court is authorized to restrain violations and award injunctive relief for violations of Section 211(h) and (o) of the CAA, 42 U.S.C. §§ 7545(h), (o), and 40 C.F.R. Part 80.

6.      Venue in this district is proper pursuant to Section 205 of the Act, 42 U.S.C. § 7524 because Defendant is located in this district and certain of the events or omissions giving rise to this action occurred in this district.

## AUTHORITY

7.      Authority to bring this action on behalf of the United States is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605, and 28 U.S.C. § 516.

## THE PARTIES

8. The United States of America, as the plaintiff in this action, is acting on behalf of the Administrator of the EPA.

9. Defendant, a corporation organized under the laws of Georgia, with its headquarters located at 101 N Lathrop Avenue, Savannah, GA 31415, produces and imports fuel and lubricant products. With terminals in Savannah, GA, Charleston, SC, and Jacksonville, FL, as well as numerous terminals along eastern United States pipelines, Defendant distributed and continues to distribute fuel throughout the eastern United States.

10. Defendant is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## CLEAN AIR ACT STATUTORY AND REGULATORY AUTHORITY

11. Section 211 of the CAA contains the renewable fuels requirements and provisions to ensure that only compliant fuel is produced and sold in the United States.

### Renewable Volume Obligations

12. The Energy Policy Act of 2005 amended the CAA to add a renewable fuel standard that required the EPA to promulgate regulations ensuring that gasoline sold or introduced into commerce in the continental United States, on an annual average basis, contains the applicable volume of renewable fuel designated in the Energy Policy Act of 2005. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (codified at Section 211(o) of the CAA, 42 U.S.C. § 7545(o)). The Energy Policy Act of 2005 further required the EPA to establish a credit trading program to help effectuate the renewable fuel mandate. *See* 42 U.S.C. § 7545(o)(5).

13. The EPA then implemented Section 211(o) of the CAA by promulgating the renewable fuel standards at 40 C.F.R. Part 80, Subpart K (renewable fuel regulations now known as "RFS1").

14. Congress then enacted the Energy Independence and Security Act of 2007 ("EISA"), which amended CAA Section 211(o), and expanded the renewable fuel program to (a) significantly reduce GHG emissions; (b) move the United States toward greater energy independence and security, including reducing the nation's dependence on foreign oil; (c) encourage the blending of renewable fuels into our nation's motor vehicle fuel supply; (d) grow the nation's renewable fuel industry; and (e) protect consumers. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492.

15. EISA also required the EPA to amend the RFS1 regulations to establish four separate categories of renewable fuels (cellulosic biofuel, biomass-based diesel, advanced biofuel, and general renewable fuel) each with its own separate volume mandate and each with a specific lifecycle greenhouse gas emission threshold in comparison to the petroleum fuels they displace. *See* 42 U.S.C. §§ 7545(o)(1)(E) (relating to cellulosic biofuel), 7545(o)(1)(D) (relating to biomass-based diesel), 7545(o)(1)(B)(i) (relating to advanced biofuel), 7545(o)(2)(A)(i) (relating to renewable fuel), and 40 C.F.R. § 80.1405 (establishing volume mandates for each category). EISA further expanded the scope of the RFS1 program by allowing credits to be generated for renewable fuel produced for use in, among other things, non-road fuel.

16. To implement EISA, the EPA promulgated additional renewable fuel standards which became effective on July 1, 2010 (known as "RFS2"). *See* 40 C.F.R. Part 80, Subpart M and 75 Fed. Reg. 14670 (March 26, 2010). The RFS2 regulations, commonly known as the

renewable fuel regulations, apply to all renewable volume regulations and compliance periods on and after January 1, 2010.  *See* 40 C.F.R. § 80.1400.

17.     The EPA, pursuant to its authority under Section 211(o) of the CAA, 42 U.S.C. § 7545(o), promulgated the Renewable Fuel Regulations.  Pursuant to the renewable fuel regulations, the EPA establishes annual renewable volume obligation (each, an "RVO" and, collectively the "RVOs") standards based on the CAA volume requirements and projections of fuel, gasoline and diesel, production for the upcoming year.  The EPA converts the standards into a compliance percentage.  Obligated parties (i.e., refiners or importers of gasoline and diesel fuel) must demonstrate compliance with the applicable percentage annually.  Renewable fuel exporters are also required to meet an RVO based on the volume of fuel that the exporter exports out of the United States.  *See* 40 C.F.R. § 80.1430.

18.     "Renewable fuel" is a fuel that is (a) produced from renewable biomass or from a biointermediate produced from renewable biomass; (b) used to replace or reduce the quantity of fossil fuel present in a transportation fuel, heating oil, or jet fuel; and (c) has lifecycle greenhouse gas emissions that are at least 20 percent less than baseline lifecycle greenhouse gas emissions, subject to certain exceptions.  *See* 42 U.S.C. § 7545(o)(1)(J), 40 C.F.R. § 80.2 (defining "renewable fuel").

19.     Renewable fuel produced in or imported into the United States is tracked by Renewable Identification Numbers (each a "RIN" and collectively "RINs") that are generated by renewable fuel producers and importers.  The RFS2 regulations define a RIN as "a unique number generated to represent a volume of renewable fuel pursuant to [40] C.F.R. §§ 80.1425 and 80.1426." *See* 40 C.F.R. § 80.2 (definition of "Renewable Identification Number"); *see also* 40 C.F.R. § 80.1425.

20.	The RFS2 regulations designate each category of renewable fuel by a separate D code. *See* 40 C.F.R. §§ 80.1425(g); *see also* 80.1426(f), Table 1.

21.	The RFS2 regulations require refiners who produce gasoline or diesel fuel within the 48 contiguous states or Hawaii, those who import such fuel into that area (collectively "Obligated Parties"), and any exporter of renewable fuel, to register with the EPA and to obtain EPA-issued registration numbers prior to engaging in any transaction involving RINs. *See* 40 C.F.R. §§ 80.76, 80.1450(a) and 80.1406(a)(1).

22.	Each time a party engages in a transaction involving RINs, that party must submit certain information to the EPA via the EPA Moderated Transaction System within five (5) business days. *See* 40 C.F.R. § 80.1452(c).

23.	The RFS2 regulations require Obligated Parties (gasoline and diesel refiners and importers) to meet their RVOs. An RVO is an annual renewable fuel obligation based upon a percentage of the volume of the fuel that an Obligated Party produces or imports into the United States. *See* 40 C.F.R. §§ 80.1406(a) and (b) and 80.1407.

24.	The RFS2 regulations allow Obligated Parties to comply with their RVOs by (i) producing renewable fuel themselves; or (ii) by way of a credit trading program that allows Obligated Parties to comply with their RVOs through the purchase and retirement of RINs.

25.	Obligated parties calculate their RVOs based on the amount of transportation fuel sold or introduced into commerce in the United States in a compliance year. *See* 40 C.F.R. § 80.1407.

26.	Fuel that is not "transportation fuel"—such as a fuel used in ocean-going vessels— does not need to be included in an obligated party's RVO calculation. *See* 40 C.F.R. §§ 80.1407(f)(8) and 80.1401.

27. Not all marine vessels are ocean-going vessels, and volumes supplied to non-oceangoing vessels must be included in RVO calculations.

28. The RFS2 regulations prohibit any person from failing to meet any requirement that applies to that person under 40 C.F.R. Part 80, Subpart M, including but not limited to, the requirements to calculate RVOs correctly, and to acquire and retire a sufficient number of RINs to meet those RVOs. *See* 40 C.F.R. § 80.1460(f) (Failure to meet a requirement.); *see also* 40 C.F.R. §§ 80.1406(b), 80.1407, and 80.1427(a)(1).

29. The renewable fuels standards are aimed at, among other things, reducing greenhouse gas ("GHG") emissions. Elevated concentrations of GHGs warm the planet, leading to changes in the Earth's climate, including changes in the frequency and intensity of heat waves, precipitation, and extreme weather events, rising seas, and retreating snow and ice. *See* 86 Fed. Reg. 43726, at 43778 (Aug. 10, 2021). The changes taking place in the atmosphere as a result of the well-documented buildup of GHGs due to human activities are changing the climate at a pace and in a way that threatens human health, society, and the environment. *Id*.

Gasoline Volatility/Reid Vapor Pressure Standards

30. Section 211(h) of the CAA, 42 U.S.C. § 7545(h) requires the EPA to promulgate regulations providing that it is unlawful for any person during the regulatory control period (from May 1 to September 15) to sell, offer for sale, dispense, supply, offer for supply, transport, or introduce into commerce gasoline with a Reid vapor pressure ("RVP") in excess of 9.0 pounds per square inch (psi).

31. Pursuant to its authority under section 211(h) of the CAA, 42 U.S.C. § 7545(h), the EPA promulgated regulations at 40 C.F.R. Part 80, Subpart B (Controls and Prohibitions), 40 C.F.R. § 80.27, that include requirements for controls and prohibitions on gasoline volatility.

During the regulatory control period, gasoline is required to meet an RVP value of 9.0 psi or less in designated volatility attainment areas. *Id.* § 80.27(a)(2)(i) (December 31, 2020) (the conventional fuels standards were streamlined and re-issued at 40 C.F.R. Part 1090 effective January 1, 2021).

32. The gasoline volatility standards are designed to reduce volatile organic compounds emissions during the summertime. *See* 69 Fed. Reg. 2398, at 2405 (Jan. 15, 2004). Higher RVP values result in increased volatile organic compounds emissions that contribute to ground-level ozone. *Id.* at 2405-06 (Jan. 15, 2004). Ground-level ozone causes (a) human health issues such as irritation and damage to the human respiratory system, which may, for instance, lead to permanent changes in lung tissue, irreversible reduction in lung function, and where long-term exposure to ozone is present, a lower quality of life; and (b) environmental issues, including, for instance, reduced ecosystem crop yields, and reduced forest productivity. *See id.*

## **ALLEGATIONS**

33. At all times relevant to this Complaint, Colonial was and is currently registered with the EPA as an importer and producer of diesel and gasoline fuel, and distributes such fuel throughout the eastern United States, including to marine terminals.

34. At various times between 2013 and 2019, Colonial sold or introduced into commerce ultra-low sulfur diesel for use in non-oceangoing marine vessels.

35. Defendant improperly excluded over 100 million gallons of diesel from its renewable volume obligation calculations. Because Defendant did not include these volumes in its RVO calculations, it failed to retire 9,004,874 RINs necessary to meet its RVO obligations between 2013 and 2019.

8

36. As a result of this improper exclusion, Colonial has not complied with its 2013 through 2019 RVOs by acquiring and retiring a sufficient number of RINs for each RVO type (cellulosic, biomass-based diesel, advanced biofuel, and renewable) to account for the fuel it sold to non-oceangoing marine vessels during that timeframe.

37. Defendant also produced three (3) batches of gasoline totaling over one million gallons at two (2) different Colonial Oil facilities in Savannah, GA and Jacksonville, FL that failed to comply with the CAA's gasoline volatility standards. The three (3) noncompliant batches are as follows:

| Report Year | Facility ID | Batch Number | Batch Volume (gal) | Production Date | Reid Vapor Pressure (psi) |
|---|---|---|---|---|---|
| 2018 | 08406 | 58 | 1,309,308 | 5/13/2018 | 9.1 |
| 2018 | 08406 | 60 | 5,036 | 5/12/2018 | 9.1 |
| 2018 | 08403 | 63 | 4,805 | 5/22/2018 | 9.3 |

## FIRST CAUSE OF ACTION

### (Violations of the CAA RVO Compliance Standard)

38. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

39. In compliance years 2013 through 2019, Colonial Oil improperly excluded over 100 million gallons of marine fuel used as transportation fuel from its RVO calculations.

40. As a result, Colonial failed to acquire and retire a total of 9,004,874 RINs in violation of 40 C.F.R. §§ 80.1406(b) and 80.1407, and 80.1460(f) required to comply with its 2013 through 2019 RVOs under 40 C.F.R. § 80.1427.

41. Pursuant to Sections 205 and 211(o) of the Act, 42 U.S.C. §§ 7524 and 7545(o), and 40 C.F.R. §§ 80.1460(f), 80.1461(b)(1), and 80.1463(c), Colonial is liable for civil penalties, the economic benefit or savings resulting from each violation (if any), and injunctive relief.

## SECOND CAUSE OF ACTION

### (Violations of the CAA RVP Compliance Standard)

42. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

43. In 2018, Colonial violated the CAA's fuels gasoline volatility regulations by producing and introducing into commerce three (3) batches of gasoline from two (2) of its facilities collectively totaling over one million gallons of gasoline that exceeded the applicable RVP standard set forth in 40 C.F.R. Part 80, 40 C.F.R. § 80.27, promulgated pursuant to CAA Section 211(h).

44. Pursuant to Sections 205 and 211(h) of the Act, 42 U.S.C. §§ 7524 and 7545(h), and 40 C.F.R. § 80.27, Colonial is liable for civil penalties.

## REQUEST FOR RELIEF

WHEREFORE, United States of America, as the plaintiff, respectfully requests that this Court enter judgment against Defendant:

A. Imposing a civil penalty on Defendant pursuant to Sections 205(b) and 211(d)(1) of the CAA, 42 U.S.C. §§ 7524(b) and 7545(d)(1), for each day of each violation alleged herein of Sections 211(h) and (o) of the CAA, 42 U.S.C. §§ 7545(h), (o), and the regulations promulgated thereunder; and subject to the corresponding statutory inflation adjustments at 40 C.F.R. § 19.4;

B. Requiring, pursuant to Section 205(b) and 211(d)(2) of the CAA, 42 U.S.C. § 7524(b) and 7545(d)(2), Defendant to retire approximately 9,004,874 RINs to satisfy its RVOs for compliance years 2013 through 2019;

C. Enjoining, pursuant to Section 205(b) and 211(d)(2) of the CAA, 42 U.S.C. § 7524(b) and 7545(d)(2), Defendant from committing any further violations of Sections 211(h)

and (o) of the CAA, 42 U.S.C. §§ 7545 (h), (o), and the regulations promulgated thereunder; and

D. Granting the United States such other relief as the Court deems just and proper.

    Respectfully Submitted,

    FOR THE UNITED STATES OF AMERICA

    TODD KIM
    Assistant Attorney General
    Environment & Natural Resources Division
    United States Department of Justice

    *KAYCI HINES*
    Digitally signed by KAYCI HINES
    Date: 2024.04.09 13:44:27 -04'00'

    KAYCI G. HINES
    Trial Attorney
    Environmental Enforcement Section
    United States Department of Justice
    P.O. Box 7611
    Washington, D.C. 20044
    Telephone: (202) 616-8789
    Email:  Kayci.Hines@usdoj.gov

    JILL E. STEINBERG
    United States Attorney
    Southern District of Georgia

    */s/ Bradford C. Patrick*
    Bradford C. Patrick
    Assistant United States Attorney
    South Carolina Bar No. 102092
    Post Office Box 8970
    Savannah, Georgia  31412
    Telephone: (912) 652-4422
    Facsimile: (912) 652-4227
    Email: Bradford.Patrick@usdoj.gov

OF COUNSEL

RYAN BICKMORE
Attorney-Advisor
Office of Enforcement & Compliance Assurance
1200 Pennsylvania Ave., NW
Washington, DC 20460