IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No. 4:24-cv-00069-RSB-CLR |
| ) | |
| v. ) | |
| ) | |
| COLONIAL OIL INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Motion to Enter Consent Decree on July 23, 2023. Dkt. No. 6. The proposed Consent Decree would resolve allegations in the United States' Complaint that Colonial Oil Industries, Inc. ("Colonial" or "Defendant"), a producer and importer of fuel and lubricant products, violated Sections 211(h) and (o) of the Clean Air Act ("CAA") and implementing regulations issued at 40 C.F.R. Part 80. Dkt. No. 1. The United States and Colonial have reached an agreement embodied in the proposed Consent Decree that requires Colonial to (1) pay a $2,805,420 civil penalty, and (2) perform specified injunctive measures. Dkt. No. 3-1.

As explained more fully below, the Court finds that the proposed Consent Decree is fair, reasonable, fulfills the goals of the Clean Air Act and EPA's Renewable Fuel Standard ("RFS") regulations, and is in the public interest. Accordingly, the Court GRANTS the United States' Motion. The Court will sign and enter the Consent Decree contemporaneously with this Order.

1

## BACKGROUND

Defendant Colonial is an importer and producer of diesel and gasoline fuel and related products, which it distributes throughout the eastern United States, including to marine terminals. The Government's Complaint alleges that between 2013 and 2019, Defendant improperly excluded over 100 million gallons of diesel fuel from its Renewable Volume Obligation ("RVO") calculations, which determine the number of renewable fuel credits, known as Renewable Identification Numbers or "RINs," that a producer or importer of fuel must obtain. *See* 40 C.F.R. §§ 80.1406(b) and 80.1407, and 80.1460(f). Specifically, the United States contends that Colonial imported and supplied the diesel fuel to non-oceangoing marine vessels and should have included the fuel in its RVO calculations, resulting in a failure to retire 9,004,874 RINs between 2013 and 2019. Dkt No. 1 ¶¶ 33-39. The Complaint also alleges that in 2018, Defendant produced three batches of gasoline totaling over one million gallons at Colonial Oil facilities in Savannah, Georgia, and Jacksonville, Florida, that failed to comply with the CAA's gasoline volatility standards. *Id.* ¶¶ 37, 43.

The proposed Consent Decree negotiated by the parties resolves these alleged Clean Air Act violations. It requires Colonial to pay a $2,805,420 penalty. Dkt. No. 3 ¶ 8. The Consent Decree also requires Colonial to retire a total of 9,004,874 unexpired valid RINs within two years. *Id*. ¶ 12.

The Government published notice of the proposed settlement in the Federal Register. 89 Fed. Reg. 08124 (April 17, 2024). The Government received a comment from a company called CoolMore, a manufacturer of fuel additives based in Savannah, Georgia. CoolMore did not comment on the adequacy or appropriateness of the Consent Decree. Instead, it contended that its CoolMore Fuel Treatment product should qualify as "renewable fuel" under the EPA's RFS

regulations and expressed its dissatisfaction with Defendant's decision not to purchase and use CoolMore's additive product. *See* Dkt. No. 6 at pp. 5-6.

## STANDARD OF REVIEW

When reviewing a consent decree, a district court must evaluate whether the decree is fair, reasonable, and lawful, and in accord with public policy and the public interest. *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240, 1242, 1244 (11th Cir. 1997). *See also United States v. Georgia-Pac. Corp.*, 960 F. Supp. 298, 299 (N.D. Ga. 1996) ("[T]he court should approve of the settlement if it determines that the settlement is fair and reasonable, and resolves the controversy in a manner consistent with the public interest."). To be fair, a consent decree must be both procedurally and substantively fair. *United States v. Duke Energy Carolinas, LLC*, 499 F. Supp. 3d 213, 218 (M.D.N.C. 2020). Procedural fairness "is measured by gauging the 'candor, openness, and bargaining balance' of the negotiation process." *Id*. (quoting *United States v. Cannons En'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)). Substantive fairness includes "concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *United States v. E.I. du Pont de Nemours & Co.*, No. 5:16-CV-00082, 2017 WL 3220449, at *14 (W.D. Va. July 28, 2017) (quoting *Cannons En'g Corp.*, 899 F.2d at 86).

A court's review of a Consent Decree "should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). Both the parties and the public benefit from the "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983). The presumption in favor of settlement is "particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained, or oriented in the field." *Duke*, 499 F. Supp. 3d at 218 (citation

omitted). "[W]here a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility." *Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D.W. Va. 2000) (citation omitted). *See also Cannons Eng'g Corp.*, 899 F.2d at 84 ("Respect for the agency's role is heightened in a situation where the cards have been dealt face up and a crew of sophisticated players, with sharply conflicting interests, sit at the table. That so many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance.") (citing *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 692 (S.D.N.Y. 1988)); *United States v. Town of Timmonsville*, No. 4:13-cv-01522-BH, 2013 WL 6193100, at *2 (D.S.C. Nov. 26, 2013) ("There is a strong presumption in favor of approval of a consent decree proposed by the United States on behalf of EPA.").

When reviewing the terms of a proposed consent decree, "the court may not modify the agreement, but can only accept or reject the terms to which the parties have agreed." *Duke*, 499 F. Supp. 3d at 217. So long as the settlement is fair, adequate, reasonable, and consistent with the goals of the applicable law, the court should approve the consent decree, even if its terms are not those "the court itself might have fashioned, or considers as ideal." *Bragg*, 54 F. Supp. 2d at 663 (citation omitted).

**FINDINGS**

The Court finds that the proposed Consent Decree is fair, adequate, reasonable, and consistent with the goals of the CAA.

The Consent Decree is both procedurally and substantively fair. It is procedurally fair because the parties were each represented by experienced environmental counsel, so there was

balance in the negotiations process. *See Duke*, 499 F. Supp. 3d at 218-219. In addition, the Consent Decree is thorough, including detailed provisions addressing payment, injunctive requirements, stipulated penalties, dispute resolution, and the effect of settlement. *See* Dkt. No. 3-1, Sections IV, V, VII, XI. This thoroughness reflects the lengthy and arms-length nature of the settlement negotiations.

The Consent Decree is also substantively fair, adequate, and reasonable. In addition to Colonial's agreement to undertake injunctive relief, Colonial agreed to pay a civil penalty just over $2.8 million, *see* Dkt. No. 3-1, ¶ 8, which is substantial and appropriate given the significance of the alleged violations. The Government considered the CAA's statutory penalty factors when negotiating the civil penalty. *See* Dkt. No. 6 at p. 10. The statutory factors include: the gravity of the violation, the economic benefit or savings (if any) resulting from the violation, the size of the violator's business, the violator's history of compliance with the Act, action taken by the violator to remedy the violation, the effect of the penalty on the violator's ability to continue in business, and such other matters as justice may require. 42 U.S.C. § 7524(b). Colonial will also retire the number of RINs the Government contends it should have retired in 2013-2019 to meet its RVOs. *See* Dkt. 3-1, ¶¶ 13-14. Taken together, these measures achieve corrective justice and ensure that Colonial will bear the cost of the harm for which it is responsible under the CAA.

Finally, the settlement furthers the goals of the CAA because it requires Colonial to implement corrective measures designed to reduce air pollution, thereby leading to improved air quality and attendant benefits to public health and welfare. The settlement also serves the public interest by avoiding litigation. *See* Dkt. No. 6 at p. 11.

The public comment that CoolMore submitted does not undermine these conclusions. The comment does not disclose facts or considerations indicating that the settlement does not meet the

standard for entry. Instead, it states that a commercial fuel additive product that CoolMore manufactures should qualify as "renewable fuel" under the EPA's RFS regulations and expresses dissatisfaction with Colonial's decision not to purchase it. CoolMore's complaint is not relevant to the Court's review of the Consent Decree. A regulated party's business decisions regarding which vendors' products to use (or not use) in its assessment of how to comply with the CAA and its implementing regulations has no bearing on the claims resolved in the Consent Decree nor would it be appropriate for the Government or this Court to dictate that a regulated party use a particular vendor's products.

## CONCLUSION

The Court finds that the Consent Decree is procedurally and substantively fair and reasonable, comports with the objectives of the Clean Air Act and its implementing regulations, and is in the public interest. Therefore, the Court grants the United States' Consented-To Motion to Enter Consent Decree Resolving Injunctive Relief and Civil Penalties Under the Clean Air Act.

Accordingly, IT IS ORDERED that:

1. The Consented-To Motion to Enter Consent Decree (Dkt. No. 6) is **GRANTED**.

2. The Consent Decree (Dkt. No. 3-1) will be signed and entered as a final judgment in this action contemporaneously with this Order, and the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED**, this 25th day of September, 2024.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA